# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| **JAMES CLIFFORD BENNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 3:20CV540-PPS** |
| | ) | |
| **KILOLO KIJAKAZI, Acting Commissioner** | ) | |
| **of the Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

James Clifford Bennett appeals the Social Security Administration's final decision denying his application for supplemental security income benefits.  That denial is the written decision of an Administrative Law Judge, entered after a hearing at which Bennett appeared and testified.[1]  [AR 39-47; AR 54-84.]  The ALJ found that Bennett has two severe impairments:  degenerative disc disease of the lumbar and cervical spine with radiculopathy and chronic obstructive pulmonary disease.  [AR 41.]  The ALJ concluded that Bennett's severe impairments do not conclusively establish disability by meeting or medically equaling the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  [AR 42.]  Based on the ALJ's findings as to Bennett's residual functional capacity as well as his age, education and work experience, the ALJ

---

[1] The administrative record [AR] is found in the court record at docket entry 16, and consists of 862 pages.  I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

concluded that Bennett can perform jobs that exist in significant numbers in the national economy, and that Bennett is not disabled.  [AR 45-46.]

Bennett asks me to reverse the ALJ's decision or remand the case for further proceedings by the Social Security Administration.  My role is not to determine from scratch whether or not Bennett is disabled and entitled to benefits.  Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence.  *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923,926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).  In other words, I can't reweigh the evidence or substitute my judgment for that of the ALJ.  *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).  But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Although I cannot reweigh the evidence found in the administrative record, reversal is required where the ALJ failed to build an "accurate and logical bridge" between the evidence and his conclusions.  *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

<u>Analysis of Treating Physicians' Opinions</u>

Bennett's first two challenges to the decision are of the same type, a contention that the ALJ erred in largely dismissing the opinions of two of Bennett's treating physicians. Under the law applicable to this case, a treating physician's "opinion on the nature and severity of [a claimant's] medical condition is entitled to controlling weight if it is well supported by medical findings and consistent with other record evidence." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018), citing C.F.R. §404.1520(c)(a).[2] If an ALJ chooses to reject a treating physician's opinion he has to give good reasons for doing so after considering the following factors:

> (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty.

*Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

Bennett's primary medical care was provided by Dr. Frank Utes and nurse practitioner Patricia Benedict. The record contains a four-page Lumbar Spine Medical

---

[2] Bennett's application for benefits was filed on February 13, 2017, before new regulations changed how an ALJ must evaluate medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c, applicable to applications filed on or after March 27, 2017.

Source Statement signed by both N.P. Benedict and Dr. Utes, dated June 21, 2017. [AR 706-709.] The Medical Source Statement contains what the ALJ rightly calls "exceptionally extreme" limitations, such as that Bennett can sit only 10 minutes at a time, can stand only 5 minutes at a time, and in an 8-hour workday can neither sit nor stand/walk more than 2 hours. [AR 707.] Dr. Utes and N.P. Benedict express the view that Bennett is unable to use his left hand to grasp objects or for fine manipulations, and can use his right hand for such purposes only 10% of an 8-hour workday. [AR 708.] According to the Medical Source Statement, Bennett is likely to be "off task" 25% or more of a typical workday and likely to be absent from work more than four days per month as a result of his impairments or treatment. [AR 709.]

The ALJ "afford[ed] very little weight" to the statement supplied by Dr. Utes and N.P. Benedict. [AR 44.] The ALJ found the limitations to be "unsupported by the objective evidence that fails to indicate any specific motor difficulties or manipulative difficulties." [AR 45.] But Dr. Utes cites to a number of "clinical findings" that show Bennett's impairments: "See attached records – MRI, neuro assessment, cardiology, pain management." [AR 706.] Contrary to the ALJ's explanation, the opinion itself notes a number of specific motor and manipulative difficulties, including chronic low back pain with radiculopathy, peripheral neuropathy, sharp lumbosacral spine pain with radiation down both legs, a weak grasp with the left hand, causing Bennett to drop things, burning and numbness in his feet, unsteadiness while standing, weak legs,

4

constant neck pain with headache, an abnormal gait requiring use of a cane, muscle spasm and weakness, motor loss and joint pain.  [AR 706-707.]

In addition, the medical record contains a number of objective findings that appear to be supportive of Dr. Utes' conclusions about Bennett's motor and manipulative difficulties.  An MRI on September 30, 2011 disclosed "[a]t C5-C6...a large disc protrusion that extends into the left neuroforamina" and "does result in significant encroachment on the left nerve root."  [AR 336.]  In June 2012, x-rays of the lumbar spine showed "[d]egenerative endplate changes are present at L3-L4 with disc space narrowing also seen at L5-S1," supporting an impression of "[m]ultilevel degenerative discogenic changes."  [AR 345.] An MRI of the lumbar spine performed on September 27, 2012 showed "[d]egenerative disc changes at L1-L2 with annular tear."  [AR 343.] An MRI of the lumbar spine performed on December 7, 2015 appears to show the progression of these conditions:  "Severe degenerative disk change is noted at L1-2 with loss of height and loss of signal...Minimal high signal within the annulus suggests annular fissure."  [AR 346.]  A November 14, 2016 lumbar MRI shows "minimal narrowing of the disk spaces at the L1 through L4 levels, with associated loss of the normal disk hydration, consistent with degenerative disk disease" and again reflects the "disk protrusion with associated annular fissure" at L1-2.  [DE 489.]  This report indicates the findings are "similar to those seen on 12/07/2015."  [DE 490.]  This recap

5

shows quite a number of objective medical findings that raise a significant question about the ALJ finding Dr. Utes' views to be "unsupported."

The ALJ's next reason for discounting Dr. Utes' assessment is the ALJ's view that if Bennett were "as limited as opined, one would expect a much more significant treatment history (such as inpatient hospitalization or invasive surgical procedure)." [AR 45.] Whether the ALJ can or should be expressing such a quasi-medical view is at least questionable. In any event, although the ALJ claims to have considered Bennett's complete medical history [AR 39], he overlooks that Bennett had in fact previously undergone a "surgical resection and fixation" to his cervical spine. [AR 44, 45, 348]. Furthermore, the medical record contains the report of a neurosurgeon, Dr. Jeffrey Crecelius, dated July 3, 2017, who reports explaining to Bennett "that there simply is not any surgical intervention that is likely to provide him with benefit." [AR 761.]

Dr. Asad Ullah is the other treating doctor whose assessment the ALJ rejected. Dr. Ullah is a neurologist who provided an undated statement expressing that Bennett "is suffering from [the] following conditions and unable to work at this stage due to these conditions." [AR 718.] The numbered list that follows reads:

1. Neck pain shooting down the arms [a]ffecting the left hand and unable to hold objects and drops things periodically from the left hand. Pain gets worse with rapid movement, lifting any weight, or any prolonged duration of standing, sitting.
2. Low back pain shooting into the bilateral lower extremities with any physical activity like bending, squatting, pushing. Undergoing care with pain management at this stage.

6

3.    Numbness and tingling in the bilateral feet along with a burning sensation in the feet consistent with neuropathy.  Due to lack of sensation in feet he has feeling of imbalance and loses balance on and off.  He is able to ambulate with the help of a cane at this stage.

4.    Due to extensive neck and low back pain he has been unable to lift any significant amount of weights since it flares up the pain.  He has been able to walk only a few steps and then has to take break, loses balance secondary to peripheral neuropathy and drops object from his hands due to pain and weakness.

[*Id.*]  Bennett had been a patient of Dr. Ullah's since at least October 9, 2015, when Bennett complained of numbness in his feet, low back pain shooting into his legs and left arm weakness.  [AR 455.]  Dr. Ullah opined that the results of the MRI on December 7, 2015 "could explain most of the pain [Bennett] is having in the low back."  [AR 470.] Over a number of visits, Dr. Ullah directed the use of treatments including oral medication, supplemental folic acid, and a lidocaine topical patch, none of which was successful in ameliorating Bennett's pain.  Dr. Ullah referred Bennett to a pain management specialist in October 2016, noting Bennett's "history of intractable low back pain and neck pain with previous history of cervical myelopathy and abnormal EMG."  [AR 351.]

As with Dr. Utes, the ALJ's reasons for discounting Dr. Ullah's conclusions are troubling.  The ALJ says that Dr. Ullah "failed to indicate specific limitations" and that his opinions "are inconsistent with a record that fails to indicate any upper extremity motor loss or manipulative difficulty."  [AR 45.]  This just appears wholly inaccurate. Specific limitations referenced by Dr. Ullah include an inability to hold objects with the left hand; increasing pain in the arms with rapid movement, lifting any weight, or

prolonged standing or sitting; low back pain radiating into the legs with any physical activity; poor balance due to neuropathy in the feet; the need of a cane for ambulation; inability to lift any significant weight due to neck and low back pain; and the ability to walk only a few steps at one time. [AR 718.] As for inconsistency with the record, I have already reviewed in some detail the objective medical findings consistent with Bennett's problems maintaining any activity due to back and neck pain originating in his spine, with maintaining his balance while standing or walking, and with the use of his left hand.

The ALJ's decision also indicates that he rejects Dr. Ullah's conclusion that Bennett is "unable to work" because such a determination is "reserved to the Commissioner." [AR 45.] But the Seventh Circuit has noted that "[w]hether a claimant qualifies for benefits is a question of law..., but a medical opinion that a claimant is unable to work is not an improper legal conclusion." *Lambert*, 896 F.3d at 776, citing *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013), and *Bjornson v. Astrue*, 671 F.3d 640, 647-48 (7th Cir. 2012). In *Knapp v. Berryhill*, 741 Fed.Appx. 324, 327 (7th Cir. 2018), the Seventh Circuit reversed and remanded where "the ALJ was of the mistaken view that Dr. Kidder's opinion of Knapp's ability to work was reserved to the Commissioner." As in *Lambert*, the court said that "[t]he legal question whether a claimant qualifies for benefits is reserved," but plainly stated that "ALJs must consider a treating physician's view that the severity of a claimant's impairments makes her unable to work." *Id.*

The ALJ has failed to give "good reasons" for discounting the opinions of Dr. Utes and Dr. Ullah. *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). The ALJ appears to have overlooked much of the objective findings in the medical record, or relied on his own judgment as to their significance when "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert*, 758 F.3d at 774. Although an ALJ is not required to exhaustively discuss every relevant regulatory factor when weighing medical source statements, the ALJ's scant explanation and apparent reliance on inappropriate or inaccurate considerations leaves no confidence that he analyzed the treating physicians' medical opinions "within the multifactor framework delineated in the regulation," giving due regard to the length, nature and extent of the treatment relationships. *Ray v. Saul*, 861 Fed.Appx. 102, 105-06 (7th Cir. 2021) (internal citation omitted).

Bennett also challenges the ALJ's reliance on the assessments offered by state agency physicians who found Bennett not to be disabled. [DE 21.] Dr. J. Sands and Dr. Jerry Smartt, Jr. each completed a Physical Residual Functional Capacity Assessment based on their review of Bennett's medical records and without examining him. [AR 124-126; AR 139-141.] Each of these physicians concluded that Bennett had the capacity to stand, walk, or sit for 6 hours in an 8-hour workday, could frequently lift or carry up to 10 pounds, and had no manipulative limitations. [*Id.*] Because Bennett's case must be remanded based on the ALJ's handling of the treating physicians, the comparative

weight of those physicians' opinions versus the agency consultants is not a fruitful subject for this opinion.

But I will critique several aspects of the ALJ's adoption of the state agency consultants' assessments. First, if the ALJ's decision suggests that he afforded great weight to the opinions of Dr. Sands and Dr. Smartt *because* they "opined that the claimant would be capable of a similar less than the full range of the light exertional level as found assessed herein," I agree with Bennett that would reflect a "backward" rationale in which "the [ALJ's] finding is reached first and then the value of the evidence is determined by whether it is similar to the finding." [DE 20 at 22.]

Second, I again point out that the ALJ's conclusions based on what he calls Bennett's "conservative treatment history" overlook a prior cervical spine fusion and the neurosurgeon's opinion that Bennett was not a candidate for further surgery, as well as the breadth of treatment options Bennett underwent or considered to treat his neck and back pain. Finally, the ALJ's reference to a "lack of significant abnormality upon diagnostic imaging" is inconsistent with one MRI showing a large disc protrusion with substantial impact on a nerve root in Bennett's cervical spine, another MRI disclosing severe degenerative disc changes in the lumbar spine, and treating neurologist Dr. Ullah's conclusion that those MRI results accounted for Bennett's back pain.

**Conclusion**

In reviewing the ALJ's decision, I "may not decide facts anew or make independent credibility determinations, and must affirm the ALJ's decision even if reasonable minds could differ about the ultimate disability finding." *Brown*, 845 F.3d at 251. Nonetheless the decision here must be reversed and remanded for further consideration because the ALJ's weighing of treating physician opinions and his acceptance of the non-examining state agency consultants' findings were not adequately explained or supported in accordance with governing legal principles. As a result, substantial evidence does not support the ALJ's determination that Bennett is not disabled, and the ALJ's decision fails to "build an accurate and logical bridge between the evidence and the result." *Beardsley*, 758 F.3d at 837.

**ACCORDINGLY:**

Pursuant to sentence four of 42 U.S.C. §405(g), the final decision of the Commissioner of Social Security denying plaintiff James Clifford Bennett's application for supplemental security income benefits is REVERSED, and the matter is remanded for further proceedings consistent with this opinion.

The Clerk shall enter judgment in favor of plaintiff and against defendant.

**SO ORDERED**.

ENTERED: January 31, 2022

/s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**